Van W. Northern
NORTHERN LAW FIRM
112 W. 8th Ave., Suite 400
Amarillo, Texas 79101
SBN:   15101100
(806) 374-2266, (806) 374-9535 FAX
ATTORNEY FOR RALPH LYLE CRUM

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | |
|---|---|
| **IN RE** § § § | |
| **RALPH LYLE CRUM,** § § | **Case No. 2-09-cv-199-J** |
| **Appellant.** § | |

## APPELLANT, RALPH CRUM'S BRIEF

This is an appeal from an Order of the U. S. Bankruptcy Court for the Amarillo Division of the Northern District of Texas, Judge Robert L. Jones presiding, which sustained objections by a creditor, Randi Crum (Debtor's ex-wife) and Kent Ries, the Chapter 7 Trustee, to exemptions   asserted by the Debtor, Ralph Crum, M.D., in amended schedules filed by Debtor on November 2, 2008 (Appellant's Designation of the Record No. 8, Docket No. 57, hereafter, "ADR No. 8).    Debtor asserted the exemptions to protect $254,902.04 of the Debtor's funds which were withdrawn from a qualified IRA (hereafter, "IRA funds") less than 60 days prior to filing bankruptcy under 11 U.S.C. Section 522(d)(12),   and other statutes and common law asserted by the debtor in his schedules and responses to objections.   Debtor asserts that the lower court erred in its legal conclusions, and in its application to the law to the stipulated facts by all the parties, and that certain findings were clearly erroneous.

**Statement of Jurisdiction for the Appeal**

The Notice of Appeal was timely filed under 28 U.S.C., Section 158(d), and after refusal of the Fifth Circuit Court of Appeals to hear a direct appeal, Debtor timely designated the record on appeal, and timely filed this Brief, complaining of a Memorandum Opinion dated February 20, 2009, (Document No. 71 in the Docket below) and a final Order of the bankruptcy court sustaining the objections to Debtor's exemptions.

**Request for Oral Argument**

Appellant, Ralph Crum, M.D., and Debtor below respectfully requests oral argument.

**Issues on Appeal**

1.      Whether the trial court's application of *In re Zibman,* 268 F.3d 298 (5th Cir. 2001) has any application to Debtor's claim under the "snap shot rule" that $254,902.04 of the Debtor's funds which were withdrawn from a qualified, IRA (hereafter "IRA funds") less than 60 days prior to filing bankruptcy, are exempt from claims against the estate under 11 U.S.C. Section 522(d)(12), and other statutes and common law relied upon by Debtor.

2.      Whether the court below improperly held that Debtor was forced to an election of exemptions to protect his IRA funds under 11 U.S.C. Section 522b(2) and (3), and/or Section 522(d) as decided by the trial court.

3.      Whether the 60 day "tolling rule" which applies to the reinvestment of IRA funds in order to maintain their exempt status, after withdrawal from a qualified IRA, must be strictly applied, where as here, (i) the Trustee objected to Debtor's exemption of the IRA funds, claiming same as an asset of the estate,  and thereby effectively prohibited Debtor's reinvestment of the funds within the necessary 60 day period; (ii) and the fund manager

misrepresented the IRA status of the funds to Debtor, after Debtor attempted to reinvest the withdrawn funds less than 60 days prior to bankruptcy.

   4. Whether all statutes and case law claimed by Debtor as a basis to exempt the withdrawn IRA funds were properly overruled by the trial court.

   5. Whether the trial court's broad denial of each and every statutory and common law basis asserted by Debtor that the IRA funds were exempt, without providing any factual or legal basis therefore, is reversible error.

   6. Whether the Trustee's or Creditor Randi Crum's failure to object to each statutory and common law basis asserted by Debtor (for the exemption of the IRA funds) constitutes a waiver, and therefore the IRA funds are exempt as a matter of law; and despite the Trustee's and Creditor Randi Crum's objections to exemptions on other grounds, the trial court should have sustained Debtor's exemptions, thereby resulting in reversible error.

   7. Whether it was inequitable for the trial court to disallow his exemption claim to the IRA funds under the stipulated facts, i.e., whether the trial court's ruling that Debtor had a duty to request tolling of the 60 day deadline to roll over the IRA funds, after Debtor filed bankruptcy and the Trustee claimed the funds for the estate is reversible error.

10. Whether the trial court's ruling that the $11,000.00 of Fidelity IRA funds paid to a third party, Trudy-Herrmann-Hall prior to bankruptcy, lost their exempt status is erroneous as a matter of law; or in the alternative, does the trial court's ruling that such funds "are *not* property of the estate" effectively prevent seizure of those funds by the Trustee.

**Statement of the Case**

This case was presented to the bankruptcy judge on stipulated facts, and certain stipulations as to the law. The stipulations (ADR 11, Docket No. 58) are correctly set forth by the Court in its Memorandum Opinion, which are fully incorporated herein. (See page 2-4 of the court's Opinion, Document 71 on the docket below). The trial court erred in applying *In re Zibman,* 268 F.3d 298(5th Cir. 2001) to the facts of this case, since that case involved the application of Texas exemptions only, and Crum claimed primarily federal exemptions. Also, it is undisputed that Appellant filed his bankruptcy case to protect his withdrawal of IRA funds well before the 60 days had expired under federal law to lawfully roll-over his IRA into an undoubtedly protected and exempt new IRA. (The parties stipulated that these funds were withdrawn by Appellant less than 30 days before filing bankruptcy, and deposited into a fund fraudulently represented to Appellant to be a qualified IRA); and thereafter the bankruptcy Trustee had claimed the IRA as part of the estate, thus preventing any additional rollover, even if Crum had discovered the fraud prior to the 60 day expiration (which the parties stipulated he had not). Simply put, the lower court's denial of the long established "snapshot rule" (i.e., that the character and validity of a bankruptcy exemption is established at the moment the bankruptcy is filed, not in light of any post bankruptcy developments) denies Appellant his fresh start as intended by the Bankruptcy Code's clear language at 11 U.S.C. 522(c) that "property exempted under this section is not liable during or after the case for any debt of the Debtor that arose…

Παγε 4

before the commencement of the case…" Here, Dr. Crum claimed 11 U.S.C., Section 522(c) at ADR 8, Docket No. 55 below, along with numerous other statutes, including Texas exemptions, in the alternative, as is his right under 11 U.S.C. 522(b)(2)9a).  The lower court also breaks clear precedent by the U. S. Supreme Court in cases such as *White v. Stump,* 266 U.S. 310, 69 L.Ed. 2d, 301, 45 S. Ct. 103 (1924), and of *Myers v. Matley,* 381 U.S. 622 87 L.Ed. 2d 1043, 63 S. Ct. 780 (1943), where each court rejected post-petition efforts to change the exempt or non-exempt status of property, even holding that an exemption "becomes fixed at the date of the filing of the Petition in bankruptcy and cannot thereafter be enlarged or altered by anything the bankrupt may do."

### The Stipulations, Pleadings, and Disposition Below

1. The parties named above filed Joint Stipulations as to the facts, and certain legal conclusions on November 6, 2008, in order to facilitate the Court's ruling on certain exemptions asserted by Debtor, which are contested by Debtor's ex-wife, Randi Crum, and Kent Ries, Interim Trustee. (The Joint Stipulations were filed herein on November 6, 2008, ADR 11, Document 58 on the Pacer Docket, which are incorporated fully herein). References to numbered paragraphs in the Joint Stipulations are made below with the designation "JS", followed by the relevant paragraph number.

2. The Objections to Exemptions for Randi Crum were are not identical to those of Kent Ries, and will be dealt with separately herein below, whenever possible. References to Randi Crum's Objections to Exemptions are made below with the designation "RCOE"; and to Kent Ries' Objections to Exemptions as "KROE", followed by the relevant paragraph number.

3. Broadly speaking, the Trustee objected to exemption of certain funds that are agreed by the parties to be directly traceable to indisputably exempt Individual Retirement

Account (hereafter "IRA") funds, (JS para 3) which had been withdrawn by Debtor less than sixty days prior to filing bankruptcy, (JS para 4) during the period in which a person is allowed to roll over such funds into another qualified IRA account, without suffering IRS penalties for prohibited pre-retirement withdrawal, and also maintaining exemption from claims of creditors. (JS para 5). Unfortunately, Debtor Ralph Crum placed $254,902.04 of these qualified IRA funds into what he discovered *post-bankruptcy* to be a non-qualified fund in Costa Rica, based on the specific representation by the Costa Rican brokerage house (known as Group SAMA), that such funds were in fact a qualified IRA. (JS para 4). It is Debtor's position *inter alia,* that the funds are exempt nevertheless because their exempt status must be determined as of the date of filing bankruptcy, when Debtor still had approximately thirty days left to roll over the funds into a qualified IRA account. (JS para 4). It is apparently the Trustee's and Randi Crum's position that the Court can look forward after the filing of the bankruptcy and determine that the Costa Rican funds are not entitled to exemption, because they were not in fact rolled over into exempt IRA funds within 60 days of their withdrawal from the undisputed IRA's which existed prior to Dr. Crum's bankruptcy. Although Randi Crum essentially agrees with the Trustee's position, she also asserts that she has a kind of "super lien" on these funds based on a Connecticut Divorce Court's order that Dr. Crum must pay $12,000.00 per month to her for "child support/alimony", so that even if these funds are exempt from the claims of creditors generally, they are not exempt from any claim she has for child support or alimony.

### ARGUMENT AND AUTHORITIES

4.      A debtor in voluntary bankruptcy may amend any schedule, including Schedule C for exempt property "at any time before the case is closed." Rule 1009, FRBP. In this case, the record reflects that Debtor amended his Schedule C exemptions on November 4, 2008.

5.      Debtor filed his original exemptions on schedule C, claiming Texas exemptions on June 16, 2008. (Doc. 9).

6.      Thereafter Debtor amended his schedules claiming federal exemptions after the Trustee and Randi Crum objected to the June 16, 2008 exemptions. (Doc. 29).

7.      Upon objection by Trustee Ries and Randi Crum to Debtor's June 16, 2008 federal exemptions, Debtor amended Schedule C a second time, on November 2, 2008, still claiming federal exemptions, but expanding the number and kind of protection available. (A true copy of the Amended Schedule C (Document 55 on the Pacer Docket) is attached hereto as Exhibit "A"). Therein, Dr. Crum presents a litany of statutory and common law bases for protecting his IRA proceeds, and other personal property, which are incorporated herein for all purposes.

Debtor also filed Responses to the Trustee's and Randi Crum's Objections to Exemptions on August 27, 2008, which set forth or explained additional grounds for his Schedule C exemptions. (Documents 26 and 28 on the Pacer Docket). Those responses and arguments are attached hereto, as Exhibits B and C, and incorporated herein as if set forth at length). However, all of Debtor's claimed and available bases set forth in Schedule C and Debtor's Response to Objections will not be discussed in this brief. Rather, the focus shall be on those set forth below, without any intention of waiving the other bases presented in the Amended Schedule C.

8.      In the last filed Schedule C by Debtor, the status quo on exemptions claimed, and objections thereto, may be summarized as follows:

a.      A $20,000.00 exemption for a dependent's (Debtor's two son's) residence in Connecticut, under 11 U.S.C., Section 522 (d) (1).

   b. A $254,902.04 exemption of the funds deposited in Group SAMA on May 29, 2008 (one day prior to filing bankruptcy), just after withdrawing the funds in April 29, 2008 from an undisputed, qualified IRA, under 11 U.S.C. Section 522 (d) (12), and numerous other statutes and bankruptcy code sections.

   c. $11,000.00 proceeds from an undisputed Fidelity IRA fund.

   d. A $3,305.00 "wild card" exemption under 11 U.S.C. Section 522 (d) (5), consisting of a portion of the $150,000.00 equity awarded Debtor by the Connecticut divorce decree, out of the Court order sale of the homestead of Debtor and ex-wife Randi Crum.

   e. $38,380.64 in a Fidelity Retirement Account, (previously contained in an employee stock ownership plan) which is not disputed by the Trustee, but is disputed by ex-wife Randi Crum, as against her alimony/child support claims only, not against creditors generally. See *In re Kane,* 336 B.R. 575 (Fla. S.D. 2006), holding that funds that Debtor rolled over, prior to his Chapter 7 filing, from ESOP to his individual retirement account would have been excluded from "property of the estate" even had this rollover never occurred, so that Debtor's pre-petition conduct in rolling over funds did not operate to destroy the exemption.

   f. A $254,902.04 exemption (or exclusion from the estate) of Debtor Ralph Crum's claims against Group SAMA for negligence, fraud, breach of fiduciary duty.

   9. Numerous Court decisions, both state and federal, have struggled with the question of how to determine the applicability of exemptions, where, as here, the passage of time may impact or change the characterization or nature of the property itself. See *In re Gibson,* 300 B.R. 866 (Md. D.Ct. 2003), overruling the bankruptcy court, and applying Maryland law, in order to hold that the exempt status of debtor's interest in tax-exempt retirement account did not expire immediately upon distribution of account funds to debtor, or when debtor had still not rolled over funds into a tax-exempt IRA as of the date of her Chapter

13 filing, but remained in effect pending roll over into IRA within the sixty day time period provided under the Internal Revenue Code for tax payer to roll over funds without forfeiting their tax exempt status. The *Gibson* decision relied heavily on precedent from the Fourth Circuit Court of Appeals that reasoned that funds withdrawn from a qualified retirement plan are entitled to tax exempt status for a period of sixty days. *In re Solomon,* 67 F. 3d 1128, 1133 (4th Cir.1995), indicating that "our holding today is consistent with the treatment accorded IRA's by the Internal Revenue Code." The only difference between the Gibson case, and the present case is that Debtor Ralph Crum did not roll his funds over into a qualified IRA account during the sixty day period, because he did not discover that the funds were not deposited into a qualified account until approximately two weeks before the filing of the Joint Stipulations on November 6, 2008. (J.S. para 4). Finally, the *Gibson* court reasoned that "[T]he question for the court is not, as Appellant argues, whether the funds lost their exemption status by being deposited into a non-qualified account. Rather, the issue is whether the funds were entitled to the same protection from creditors in bankruptcy as that afforded that outside bankruptcy under the Internal Revenue Code." *Gibson at 869.*

10. A number of courts have held that the right to exemptions is determined by facts as they existed on the date of the original bankruptcy petition." *In re: Sandoval,* 103 F. 3d 20 (5th Cir. 1997), *at 23*.

Using the rules of statutory construction set out in *United States v. Ron Pair Enterprises, inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030. 103 L.Ed.2d 290 (1989) as the Fifth Circuit Court did in *Sandoval*, the Debtors' position is consistent with the clear meaning of the Bankruptcy Code. The establishment of exemptions in the Bankruptcy Code clearly uses the present tense in

setting out a debtor's ability to choose state or federal exemptions. Debtors may exempt "property that is *exempt* under Federal Law...or State or local law that is applicable on the date of the filing of the petition..." 11 U.S.C.522(b)(2)(a) [emphasis added]. To follow the lower court's position, this Court would have to add new meaning to section 522 of the Bankruptcy Code.

     11. Debtor's position is supported by *White v. Stump,* 266 U.S. 310, 69 L.Ed.2d 301, 45 S. Ct. 103 (1924). The ruling confirms the proposition that exemptions are measured as of the petition date. The Supreme Court rejected post-petition efforts to change the exempt or non-exempt status of property.

     12. Debtor also relies upon the case of *Myer v. Matley,* 381 U.S. 622, 87 L.Ed.2d 1043, 63 S.Ct. 780 (1943) which states that the debtor's right to a homestead exemption "becomes fixed at the date of the filing of the petition in bankruptcy and cannot thereafter be enlarged or altered by anything the bankruptcy may do." The right to a homestead having been fixed, the Supreme Court in *Myers* merely let the debtor conduct the ministerial act of declaring the homestead post-petition, as was his right. The homestead right itself was not created, gained or lost post-petition, just as Dr. Crum's right to roll-over his IRA was not created, gained or lost post-petition. It was simply created by federal law, and but for the fraud of the investment firm, which is not disputed, but confirmed in the stipulations, would have been completely

     13. There are numerous Texas bankruptcy cases which are contrary to the court below. The issue was first directly addressed in *In re. Harlan,* 32 BR 91 (Bankr. W.D. Tex. 1983). In this case where homestead sale proceeds were claimed, the court stated "because the substantive rights of the parties were fixed on the date of the filing of the petition the proceeds must,

therefore, be allowed as exempt, regardless of what use the debtors might make of the proceeds after the date of the filing of their petition." *Harlan*, at 93. The court stated the debtor could use the proceeds "for any purpose he chooses." *Id.* .

14. The next bankruptcy court reviewing the issue was even stronger in the case of *In re. Reed,* 184 BR 733 (Bankr. W.D. Tex. 1995). Here, a Chapter 11 debtor sold his homestead for cash and a note, then converted to Chapter 7. The trustee objected to the homestead claiming that a note is not exempt proceeds. The court rejected the objection, discussing both the notion that a post-petition change was relevant, and rejecting the argument that the use of the proceeds is relevant, as the Trustee does.

A post-petition change in the character of property claimed as exempt will *not* change the status of that property, relying on the principle that once property is exempt, it is exempt forever and nothing occurring post-petition can change that fact. (Emphasis in original)

Nothing in the Bankruptcy Code vaguely suggests that, as a precondition to enjoying the protection of that provision, the debtor must maintain the exempt character of the property.

15. We argue that the majority of courts that have ruled on this issue, concluding that a post-petition transformation of exempt property into a form of property which would not be exempt under state law does not return the property to the estate. See also, *In re: Snowden,* (Bankr. C.D. Illinois, 2008), refusing to follow *Zibman,* above.

16. The case of *In re. Malone,* 201 BR. 175 (Bankr. W.D. Tex. 1996) is also in support of the Debtor's position. In this case the court was considering how to count the six months in a homestead context. Under one interpretation, the six months ran the day after the

bankruptcy petition was filed. The court upheld the claim of exemption for the proceeds and in doing so, addressed the issue before this court: "The proceeds were exempt on the filing day, and thus are exempt today." *Malone,* at 176. The lower court's argument is thus specifically rejected.

17. Contrary to the efforts of the Trustee to construe cases otherwise, there is not a single case in the nation which clearly supports his position, other than *Zibman*., above which is not on point.

*The Lower Court's position is contrary to the Bankruptcy Code*

18. Section 522c of the Bankruptcy Code states that "...property exempted under this section is not liable during or after the case for any debt of the Debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case..." As the court pointed out in the case of *In re. Reed,* 184 BR 733 (Bankr. W.D. Tex. 1995), the lower court's argument would render 11 U.S.C. 522(c) meaningless. In *Reed,* Judge Clark interpreted 522(c) to "immunize" exempt property against any liability for pre-petition debts. *Id.* at 738. "The practical implication is that such property is forever protected from the claims of pre-petition creditors, and is essentially removed from the bankruptcy estate." *Id.*

*The Debtor is in a "Catch 22"*

19. Estate property initially includes even property exempted by the debtors. *In re. Patterson,* 128 BR 737 (Bankr. W.D. Tex. 1991); *In re. Paynor,* 68 BR 919 (Bank. N.D.Tex. 1987). Debtors cannot "jump the gun" and dipspose of exempt property until exempt property has been removed from "property of the estate." *In re. Kasishke,* 40 BR 712, 714 (Bankr. N.D. Tex. 1984).

The *Kasishke* court sanctioned the debtors for the post-petition sale of their exempt homestead when the sale was prior to the expiration of 30 days after the Section 341 Meeting. How was Dr. Crum to roll-over his funds in the face of the trustee's control over all his assets until the exemptions are determined, without violating federal civil and criminal law?

20. At least two United States Supreme Court opinions have recognized that exempt funds do not lose their exempt status upon deposit if the funds in the account can be traced to exempt funds. They are *Porter v. Aetna Casualty & Surety,* 370 U.S. 159, 82 S. Ct. 1231, 8 L.Ed 2d 407 (1962) (veterans benefits) and *Philpott v. Essex County Welfare Bd.,* 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed 2d 608 (1973) (welfare benefits).

21. Also see, *In re Ryzner,* 208 BR 568 (Bankr. M.D. Fla. 1997) (exempt disability payments deposited into an account with nonexempt funds), *In re. Norris,* 203 BR 473 (Bankr. D. Nev. 1996) (exempt wages deposited into an account with nonexempt funds) and *In re. Fraier,* 116 BR 675 (Bankr. W.D. Wis. 1990) (exempt disability payments deposited into an account with nonexempt funds) the court concluded that exempt assets retained their exempt status even if commingled.

22. Cases from around the country are generally described in 31 Am.Jur.2d Exemptions section 224, 1989 as follows: "There is authority that a deposit of exempt funds in a bank does not affect a debtor's exemption, nor change the exempt character of the fund, so long as the source of the exempt funds is reasonably traceable. If it is impossible to separate out exempt from nonexempt funds, the general rule is that an exemption cannot lie."

Case No. 2-09CV-199-J; In re: Ralph L. Crum v. Kent Ries and Randi Crum
Brief of the Appellant                                                                                                    Page   13

23.     Dr. Crum argues that this Court should follow well established precedent that the availability of an exemption is established at the time the bankruptcy is filed, not by any conduct or occurrence (such as the expiration of the sixty day safe haven rollover period) after the bankruptcy is filed.  Although Debtor recognizes that the result in *Zibman* was the loss of the homestead proceeds, Dr. Crum argues that the principles of law applied here should protect and support his claim of exemptions to the IRA proceeds which he attempted to rollover into the Group SAMA fund.

24.     It appears that *In re Zavala,* 366 B.R. 643 (Bankr.W.D.Tex.2007), is contrary to Debtor's position, since *Zavala* holds that the debtor lost her exemption in proceeds from the sale of an exempt homestead, to the extent that she did not reinvest them in a new homestead within six months of the sale. Therein, Judge McGuire reasoned that the holding of *In re Zibman* by the 5th Circuit required his holding in *Zavala*. *Zavala* held that while the debtor's, who filed for bankruptcy relief less than six months after the sale of their homestead, were entitled to a Texas homestead exemption in proceeds as of the petition date, that exemption could not exceed that to which they would have been entitled under state law had no bankruptcy petition been filed, and was subject to all of the limitations integral to the exemption under state law, including the requirement that the sales proceeds must be reinvested in another homestead within six months after the sale. *Zavala* at  652,653.

The difference here is that Debtor attempted in good faith to deposit his funds in an exempt IRA fund, based on the (stipulated) misrepresentation of the Group SAMA broker, and did not discover the misrepresentation until approximately two weeks prior to the filing of the Joint Stipulations on November 6, 2008. The Court, as a court of equity should not punish Debtor for his reliance on the stipulated misrepresentations upon which he relied, on the eve of filing bankruptcy.

25. Also, Dr. Crum was not free to transfer or dispose of assets he claims as exempt, once the Trustee, or a creditor has provided notice of an objection to the claimed exemption, under penalty of fraud or contempt of court. This fact places debtor in the proverbial trap between a rock and a hard place. If he moves or disposes of the funds without the permission of the Trustee, creditor, and court, he risks the wrath of the court for interfering with property that is arguably non-exempt. On the other hand if he does not move the property upon discovery of its deposit into non-exempt funds, then he loses the exemption.  The lower court's ruling that Debtor should have sought some kind of waiver in order to avoid these sanctions is clearly erroneous, since it was stipulated that Dr. Crum did not discover Group SAMA's fraud until "approximately two weeks ago" (i.e., approximately October 20, 2008, months after the 60 day window for a safe haven roll-over had expired post-bankruptcy.)  Debtor argues that fairness and equity should allow him the protection of the exemption so that he may roll the funds over into an IRA, after filing the bankruptcy and discovery of the misrepresentation.

26. In the case of *Swift v. State Farm Life Ins Co*, 129F.3d 792 (5th Cir. 1997), the Court went to great lengths to protect the IRAs of a debtor, in a similar loss of an IRA due to no fault of his own. There, a Chapter 7 debtor brought a state court action against the administrator of his Keogh retirement plan, alleging that the administrator was liable for the loss of his bankruptcy exemption for his IRA under theories of negligence and breach of fiduciary. The debtor claimed exemption for this cause of action, and the 5th Circuit held under Texas statute exempting qualified retirement accounts from the bankruptcy estate that such exemptions were entitled to a liberal construction and scope, and therefore the exemption should be allowed. The *Swift* court specifically held as follows "Today, we hold that Swift's causes of action against State Farm to replace the lost IRA or exempt property." See Headnote 19, at page 801.

27. But, Debtor is also entitled (in the alternative), to rely on the Texas exemptions, based on the incorporation of same through 11U.S.C. 522 (d) (10), which was specifically claimed by Debtor for all of his IRA funds, or proceeds thereof with respect to the Group SAMA funds, the Fidelity Retirement Account funds, the Fidelity IRA proceeds, the Wachovia SEP IRA account, and the Debtor's claim against Group SAMA International. It is said that a plan need not be tax-qualified for its funds to be exempt under Section 522 (d) (10) (E). See *In re Golff,* 706 F.2d 574, 587 (5th Cir., 1983). Tax-qualification is required only if the plan was established by or under the auspices of an insider with respect to the plan. No such allegation against Debtor Dr. Crum has been made. The lower court could have found that the Group SAMA fund into which Dr. Crum deposited his exempt IRA funds in fact qualifies for exemption under Section 522 (d) (10) (e), if that court had found that the fund or plan is similar to a qualified IRA. Section 522 (d) does not specifically exempt the funds in a retirement plan. It exempts only "the debtor's right to receive a payment" under the plan. *In re Carmichae,* 100 F.3d 375 (5th Cir.1996). The trial court's decision was clearly erroneous in insisting that "Crum may not also claim the accounts as exempt under state law pursuant to Section 522(b)(3) of the Bankruptcy Code." (See Memorandum Opinion at top of page 6.)

28. Should this court conclude that none of Debtor's federal exemptions were available, then there were ample state statutory exemptions claimed for the IRA funds which were not objected to by any party, nor given anything but a broad brush dismissal by the court, without any recitation to the stipulated facts or law. Such is clearly erroneous, and should be reversed. The stipulated facts fairly demand that in the interest of justice, Dr. Crum not lose his exempt property due to the fraud of Group SAMA, combined with the trustee's strangle hold on the claimed funds under penalty of contempt. The lower court's decision results in an hundred thousand dollar ($100,000.00) penalty, combined with the total loss of his IRA.

WHEREFORE, PREMISES CONSIDERED, Debtor prays that the lower court's decision be reversed and rendered; or reversed and remanded for further proceedings; and that the objections of the Trustee and Randi Crum be in all ways denied; that Debtor's Amended Schedule C be sustained in whole or in part; and for such relief at law and equity to which he may be justly entitled, including but not limited to his attorney's fees.

Respectfully submitted,

**NORTHERN LAW FIRM**
112 W. 8th Ave., Suite 400
Amarillo, Texas   79101
Tel. (806) 374-2266
Fax. (806) 374-9535

/s/ Van W. Northern
Van W. Northern
State Bar No. 15101100

*Attorney for Debtor*

## CERTIFICATE OF SERVICE

The undersigned certifies that he has on the date shown below transmitted a true copy of the foregoing document to the following parties in interest by electronic notification via the court's electronic case filing system or by regular mail on the   23rd   day of  September   , 2009:

Kent D. Ries
600 S. Tyler, Suite 1300
Box 12058
Amarillo, Texas 79101
*Chapter 7 Trustee*

Eddie R. Jimenez
Pite Duncan, LLP
525 E. Main Street
P.O. Box 12289
El Cajon, California   92022-2289

Cole Young
Templeton, Smithee, Hayes,
     Heinrich & Russell, L.L.P.
P.O. Box 15010
Amarillo, Texas 79105

U. S. Trustee
1100 Commerce Street, Room 9C60
Dallas, Texas   75242

/s/ Van W. Northern
Van W. Northern